```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

JOHNNIE L.CLEVELAND

                Plaintiff,                06-CV-6016

v.                                                          **DECISION**
                                                          **and ORDER**

JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

## INTRODUCTION

Plaintiff, Johnnie L. Cleveland ("plaintiff" or "Cleveland"), filed this action seeking review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Jurisdiction to review the Commissioner's decision arises under 42 U.S.C. § 405(g). On July 3, 2006 the plaintiff moved for judgment on the pleadings. Also on July 3, 2006, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Commissioner moved for judgment on the pleadings affirming her final decision that the plaintiff was not eligible for DIB or SSI.

For the reasons that follow, this Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, the defendant's motion for judgment on the pleadings is granted.

PROCEDURAL HISTORY

Cleveland allegedly became disabled on September 30, 2003 due to a rotator cuff injury (Tr. 64-65)[1]. On May 13, 2004 Cleveland filed an application for DIB and SSI (Tr. 18). His claims were initially denied (Tr. 56-59) and Cleveland requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 49). A hearing was held on May 25, 2005 in Rochester, NY (Tr. 140-162). Cleveland appeared with counsel and testified. A vocational expert also testified (Tr. 142). The ALJ subsequently denied his claims on June 27, 2005 (Tr. 15-25). On November 18, 2005, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Cleveland's request for review (Tr. 4-6). He filed this action on January 9, 2006, appealing the ALJ's pursuant to 42 U.S.C. § 405(g).

BACKGROUND

A. Non-Medical Evidence and Hearing Testimony

Johnnie Lee Cleveland was born on July 10, 1951 (Tr. 40). He has a high school education and some post-high school mechanical training through the military and technical schools (Tr. 143). Cleveland is married and has custody of his three-year-old grandson on alternating weekends (Tr. 145-146). He is able to cook simple

---

[1] All citations "Tr." refer to the Transcript of the Administrative Record submitted to the Court as part of the defendant's Answer which include, *inter alia*, plaintiff's medical records, a transcript of the hearing before the ALJ and copies of the ALJ's decision denying plaintiff DIB and SSI.

2

meals, do small amounts of dishes, pick up toys around the house, drive for under thirty minutes, go to church, visit his ailing mother and occasionally pick up his grandson, who at the time of the hearing weighed thirty-three pounds (Tr. 150, 152-154, 156-157). He feels that he is able to do a lot of things but only for a short period of time (Tr. 150). His activity level is very dependent on what he did the day before. Some days he has difficulty getting dressed in the morning and other days he "could probably throw a discus" (Tr. 151). If he takes pain medication before he goes to bed he is able to sleep four to six hours a night (Tr. 152). He last worked as a toolmaker at Jasco Cutting Tools, Inc. (Tr. 143). He became unable to work on September 30, 2003 due to a rotator cuff injury, and has a pending worker's compensation case (Tr. 145). He has not attempted to find any work since then because he has been under doctors' care. (Id.)

    B. <u>Medical Evidence</u>

On July 16, 2003 Cleveland was examined by Dianne Marciano, a physician's assistant to Dr. Schlageter (Tr. 107). Cleveland complained of right shoulder pain that had lasted for several months and was not relieved by Advil. On examination Cleveland had discomfort with anterior rotation and on palpation. Pain went down his arm and into his hand on occasion. He was only able to abduct with discomfort. X-rays of the right shoulder showed evidence of mild degeneration at the acromioclavicular joint (Tr. 109). Ms.

Marciano started Cleveland on Arthrotec and referred him to Dr. Robert Little, an orthopedic surgeon (Tr. 107).

Dr. Little examined Cleveland on August 18, 2003 (Tr. 118). Cleveland said he had had right shoulder pain off and on for the past year but that it had gradually been getting worse. He described the pain as "achy" and "shooting down his arm into his hand." The pain varied from a four to an eight out of ten and he was unable to sleep at night. He had stopped taking his Arthrotec because it bothered his stomach and didn't work. On examination Cleveland had full range of motion but exhibited a positive impingement sign as well as pain against resisted abduction. Dr. Little diagnosed a possible rotator cuff tear with impingement syndrome. He referred him for a diagnostic MRI and prescribed Vicodin for pain. The MRI was performed on August 15, 2003 and confirmed Dr. Little's diagnoses of a rotator cuff tear with impingement syndrome (Tr. 117, 119).

Cleveland decided to proceed with open repair of the rotator cuff (Tr. 117). On October 22, 2003 Dr. Little performed an open acromioplasty with repair of the right rotator cuff and resection of the distal end of the clavicle (Tr. 88). Cleveland was see post-operatively on October 29, 2003 by Christine Hamblin, a physician's assistant to Dr. Little, and reported that he was "doing fairly well" but had quite a bit of pain in the evening (Tr. 116). Ms. Hamblin switched his pain medication from Oxycodone to

Naproxen and Vicodin and stated that he was temporarily totally disabled.

Cleveland attended physical therapy from November 21, 2003 to March 2, 2004 (Tr. 93-104). Over the course of fourteen sessions his functioning and symptoms generally improved (Tr. 94). He made gains in flexibility and range of motion and progressed toward his goals (Tr. 98, 100, 101). Cleveland called to cancel an appointment on March 10, 2004 and made no further attempt to contact the therapist (Tr. 93-94). He was discharged from physical therapy due to non-attendance (Tr. 93).

Approximately five weeks after surgery, on December 1, 2003, Cleveland returned to Dr. Little (Tr. 114). Dr. Little noted that Cleveland was progressing as expected but that given the degree of strength needed for his employment and the type of positions his arm was in, he would be out of work a minimum of twelve weeks. He reported that Cleveland was totally disabled at that time.

Over the next four months Cleveland continued to improve. On January 2, 2004 Dr. Little reported that Cleveland continued to progress as one would expect given the degree of tearing of his rotator cuff and the amount of surgery that had to be accomplished (Tr. 115). Dr. Little discontinued his Naprosyn and Vicodin and placed him on Darvocet for pain control. On February 2, 2004 Cleveland reported to Ms. Hamblin that he was "doing fairly well" (Tr. 114). On examination his shoulder moved fairly well and his

cuff strength was improving. On March 18, 2004 Dr. Little noted that Cleveland was doing "reasonably well" (Tr. 113-114). He was tender along the anterior portion of his shoulder and had internal rotation to about L5 but his strength was improving (Tr. 113). On March 22, 2004 Ms. Marciano noted that he was off pain medication for his shoulder and that his shoulder was doing "some better" (Tr. 105). On April 29, 2004 Dr. Little noted that Cleveland was "definitely making progress" and could do a lot of his exercises on his own (Tr. 113). He had some mild weakness and pain from an arc at 90 degrees to 120 degrees of the right shoulder and his internal rotation was to about T10. Throughout this time Dr. Little and Ms. Hamblin opined that Cleveland was totally disabled and anticipated his return to work sometime in August (Tr. 113-114).

On June 24, 2004 Cleveland complained to Dr. Little of continued discomfort in his right shoulder and pain and weakness for days following even minimal activity (Tr. 113). Examination revealed weakness with maintaining abduction at 90 degrees. His internal rotation was only to about L4 and his external rotation lacked about ten degrees. Dr. Little recommended continuing with his own exercise strengthening program and opined that he was disabled (Tr. 112).

Also on June 24, 2004 Cleveland was assessed by a state agency medical expert for his physical residual functional capacity (Tr. 74-79). It was found that Cleveland could occasionally lift and/or

6

carry twenty pounds, frequently lift and/or carry ten pounds, stand, walk and sit about six hours in an eight hour day, and push or pull an unlimited amount (Tr. 75). He was limited only in frequent reaching above the shoulder level with his right arm (Tr. 76). It was noted that Cleveland had mild weakness and pain from an arc at 90 to 120 degrees and an internal rotation to T10 (Tr. 75).

Cleveland was still complaining of shoulder discomfort on July 30, 2004 (Tr. 112). He stated that he heard occasional popping with any overhead movements and that he had pain with even minimal activity. He had been trying to do his exercises on his own at home but they aggravated his shoulder. He was also having some pain at night, causing difficulty sleeping, and requested Vicodin because it had helped him in the past. On examination Mr. David Paniccia, a physician's assistant to Dr. Little, noted that he had good range of motion but still had some tenderness over the anterior portion of the shoulder. He could internally rotate to T10. His rotator cuff strength was just a little weaker on the right than on the left but he still had some weakness while maintaining abduction at 90 degrees. Mr. Paniccia urged Cleveland to continue working on his shoulder exercises and gave him a prescription for Vicodin to help him sleep.

Cleveland was still complaining of difficulty with his right shoulder when he saw Dr. Little on September 2, 2004 (Tr. 110). He

had pain from an arc from about 80 to 120 degrees but no atrophy was noted and his deltoid and rotator cuff appeared to be intact. Dr. Little elected to administer a single shot of corticosteroid.

On October 4, 2004 Cleveland was still complaining of difficulty with his right shoulder (Tr. 110). Upon Dr. Little's examination, Cleveland had an arc at about 80-100 degrees which reproduced crepitance in the right shoulder with discomfort. Dr. Little stated that Cleveland would most likely not be able to return to his employment but wanted to reserve judgment until a full year had passed from the surgery, i.e. the next month. At the time his disability status was unchanged.

Dr. Little examined Cleveland on November 4, 2004, more than one year after his surgery (Tr. 110-111). His status had not changed since his previous examination. Dr. Little felt that Cleveland had reached maximal medical improvement, with about fifteen degrees of loss of internal and external rotation. Dr. Little opined that Cleveland would not be able to return to his previous type of employment and that he had a permanent partial disability of the shoulder. With his range of motion loss and his rotator cuff difficulties, Dr. Little stated that he had approximately a 30% loss at the shoulder level.

On March 31, 2005 Cleveland was still complaining of right shoulder pain and was examined by Susan Sargent, a physician's assistant to Dr. Little (Tr. 124). Although he denied any new

injury, Cleveland described his shoulder pain as similar to a toothache and stated that he had a difficult time getting comfortable, especially at night, and that even normal daily activities were difficult. On examination Cleveland was slightly tender at the subacromial region. He had forward elevation and abduction to 140 degrees and internal rotation to L1. His rotator cuff strength was slightly weaker on the right than on the left. X-rays revealed the glenohumeral joint to be well maintained without any evidence of arthrosis. The humeral head was well seated in the glenoid and there was some slight calcification along the coracoclavicular ligament. Ms. Sargent suggested a corticosteroid injection but Cleveland declined because it had not been helpful for him in the past. He was then prescribed Feldene and Tramadol for pain and instructed to discontinue his Vicodin.

    After the ALJ issued his decision on June 27, 2005, Cleveland submitted two more pieces of evidence to the Appeals Council. On July 22, 2005, Cleveland was seen by Kate Sherman, a physician's assistant to Dr. Little, for a re-evaluation of his right shoulder pain and for a new onset of right elbow pain (Tr. 136-137). Cleveland stated that he has noticed no improvement in his right shoulder. He also stated that he has been doing his exercises and has a pretty good range of motion but is very weak. On examination he had full forward flexion and could abduct to approximately 90-100 degrees before it was painful. He could externally rotate

approximately 30 degrees and internally rotate to L5.  Ms. Sherman opined that his right elbow pain was due to right lateral epicondylitis, which was secondary to his limited strength and compensation for his right shoulder.  She administered a cortisone injection and stated that at that time Cleveland remained disabled.

Dr. Little completed an employability assessment form for the New York State Office of Temporary and Disability Assistance on August 2, 2005 (Tr. 138-139).  He related a diagnosis of status-post right shoulder repair with acromioplasty and right lateral epicondylitis (Tr. 138) and opined that Cleveland was temporarily totally disabled until re-evaluated on September 2, 2005 (Tr. 139).

## LEGAL STANDARD

### A. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims on the denial of Social Security benefits.  When considering a claim, the Court must accept the findings of fact made by the Commissioner provided that such findings are supported by substantial evidence in the record.  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938).

Under this standard, the court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a

reasonable mind to accept the conclusions reached by the law judge." <u>Sample v. Schweiker</u>, 694 F.2d 639,642 (9th Cir. 1982).

   B. <u>Legal Standards</u>

   The plaintiff maintains that he is entitled to DIB and SSI benefits as provided in Titles II and XVI of the Act.  <u>See</u> 42 U.S.C. §§ 423(d), 1382(a)(3).  Entitlement to benefits under the Act is conditioned upon compliance with all relevant requirements of the statute.

   To be entitled to DIB, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c).  To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. §§ 1382a, 1382b.  Under either statute, however, a claimant must demonstrate the inability to engage in a substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

   Furthermore, a claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); <u>see</u> 20 C.F.R. §§ 404.1520, 416.920.

In evaluating disability claims, the Commissioner instructs adjudicators to follow the five step process promulgated in 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity.  Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work.  Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission.  If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled.  If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work.  If he is not, the fifth and final inquiry is whether the claimant can perform any other work.  The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner.  <u>Bush v. Shalala</u>, 94 F.3d 40, 45 (2d Cir. 1996).

<u>DISCUSSION</u>

Here, the ALJ properly followed the five step procedure.  The ALJ found that the plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) suffered from a "severe" right shoulder impairment as based on the

requirements in the Regulations at 20 C.F.R. §§ 404.1520 and 416.920; (3) did not have an impairment meeting or medically equivalent to one of the listed impairments in Appendix 1 of the C.F.R., Subpart P, Regulations No. 4; (4) was unable to perform any of his past relevant work as a toolmaker but could perform work meeting the residual functional capacity for light work with the limitations of lifting/carrying twenty pounds occasionally and ten pounds frequently, no right overhead reaching, no work in hazardous environments, no work in extreme temperatures and no climbing; and (5) showed that there were a significant number of jobs in the national economy which he could perform. (Tr. 18-25).

The Commissioner contends that because there is substantial evidence in the record to support the ALJ's determination that the plaintiff is not disabled, her motion for judgment on the pleadings should be granted.

The plaintiff contends that although the ALJ followed the five step procedure, he improperly concluded that Cleveland was not disabled. Specifically, the plaintiff argues that the ALJ erred when he (1) failed to give the testimony of the treating physician the proper weight when making his determination; (2) failed to give Cleveland's subjective evidence of pain and disability the proper weight; (3) accorded too much weight to Cleveland's ability to perform some routine day-to-day activities; and (4) failed to properly apply Medical-Vocational Guideline 201.14 which requires

a finding that Cleveland is disabled.  Therefore, the plaintiff argues that because the ALJ erred, the determination should be reversed or in the alternative, it should be remanded to require the ALJ to apply the proper legal standards in weighing the evidence.  This Court finds that there is substantial evidence in the record to support the ALJ's determination that the plaintiff is not disabled.

The ALJ did consider the opinion of Cleveland's treating physician Dr. Little (Tr. 22).  After Cleveland's surgery, Dr. Little opined that he was temporarily totally disabled (Tr. 110-116).  However, on November 4, 2004, more than one year after the surgery, Dr. Little stated that Cleveland had reached maximal medical improvement and had a permanent partial disability of the shoulder (Tr. 111).  In support of this assessment, Dr. Little noted that Cleveland had a loss of motion of the right shoulder and rotator cuff difficulties that resulted in an approximate 30% loss of range of motion at the shoulder level.

The ALJ afforded the proper weight to Dr. Little's opinions. At the time of the ALJ's decision, Dr. Little's opinion that Cleveland was temporarily totally disabled applied only to his condition post-surgery and not to his condition one year after surgery.  On August 2, 2005, more than one month after the ALJ's decision, Dr. Little once again reported that Cleveland was temporarily totally disabled (Tr. 139).  Cleveland, however, had

denied any new injury (Tr. 124) and his shoulder functioning and symptoms were generally unchanged (Tr. 136-137). The Appeals Council was correct in denying a review of the ALJ's decision based on this testimony.

The AlJ also afforded the proper weight to Dr. Little's November 4, 2004 residual functional capacity assessment. Dr. Little's report applied only to Cleveland's right shoulder impairments. Dr. Little felt that Cleveland had a permanent partial disability of the shoulder, with about fifteen degrees of loss of internal and external rotation and that his range of motion loss and his rotator cuff difficulties accounted for an approximate 30% loss of range of motion at the shoulder level. Dr. Little also specifically stated that Cleveland would not be able to return to his previous employment as a toolmaker (Tr. 111). The assessment did not limit Cleveland in any other way or mention any other employment limitations. Dr. Little's residual functional capacity assessment is also consistent with the opinion of the state agency medical expert. The state medical expert concluded that Cleveland could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand, walk and sit about six hours in an eight hour day, and push or pull an unlimited amount (Tr. 75). Cleveland was limited only in frequent reaching above the shoulder level with his right arm (Tr. 76). Therefore, the ALJ was correct in affording more weight to Dr. Little's November 4, 2004 report as

it accurately represented Cleveland's recovery more than one year post surgery and was also consistent with the opinion of the state agency medical expert.

The ALJ determined that Cleveland was essentially credible and that his testimony at the hearing was consistent with the limitations established in the ALJ's residual functional capacity (Tr. 21). This is the proper weight to afford Cleveland's subjective evidence of pain and disability. On March 31, 2005 Cleveland told Ms. Sargent that even his normal daily activities were difficult (Tr. 124). At the hearing, however, Cleveland testified that he could cook simple meals, do small amounts of dishes, pick up toys around the house, drive for under thirty minutes, go to church, visit his ailing mother and occasionally pick up his thirty-three pound grandson (Tr. 150, 152-154, 156-157). He felt that he was able to do a lot of things but only for a short period of time (Tr. 150). Cleveland's testimony is consistent with being able to perform a significant range of light work.

The ALJ balanced Cleveland's testimony relative to his ability to perform some routine day-to-day activities along with Cleveland's subjective evidence of pain and disability (Tr. 21-22) as well as Dr. Little's objective medical evidence and the state agency medical expert's residual functional capacity assessment (Tr. 22). All of that evidence is consistent with the conclusion

that Cleveland is able to perform a significant range of light work (Tr. 25).

Contrary to Cleveland's claim, the ALJ was not required to apply Medical-Vocational Guideline 201.14 which is relevant when a claimant is capable of performing only sedentary work. Here, there is substantial evidence in the record that Cleveland is capable of performing a significant range of light work (Tr. 25).

Therefore, I find that the ALJ's decision is supported by substantial evidence in the record and that the record, read as a whole, presents sufficient evidence to support the conclusions of the ALJ.

## CONCLUSION

For the reasons set forth above, I do find substantial evidence in the record to support the ALJ's conclusion that the plaintiff is not eligible for DIB or SSI. Accordingly, the Commissioner's motion for judgment on the pleadings is granted.

ALL OF THE ABOVE IS SO ORDERED.

                                      S/Michael A. Telesca
                                      _____
                                      MICHAEL A. TELESCA
                                     United States District Judge

DATED:   Rochester, New York
         August 8, 2006